PHILIP J. DANAHER, ESQ.
Chapter 7 Trustee
252 Broadway
Rensselaer, NY 12144

CHRISTIAN H. DRIBUSCH, ESQ.
Special Counsel to Chapter 7 Trustee
The Patroon Building
Five Clinton Square
Albany, NY 12207

| | |
|---|---|
| GASPAR & SMITH, PLLC | YURI J. GASPAR, ESQ. |
| Attorneys for Haselton Lumber Co., Inc. | Of Counsel |
| 2284 Saranac Avenue | |
| Lake Placid, NY 12946 | |

RE:   WARREN M. CHURCO
      CASE NO. 07-61442

## **LETTER DECISION AND ORDER**

Before this Court is the Fee Application of Christian H. Dribusch ("Dribusch"), Special Counsel to the trustee appointed in this Chapter 7 case, Philip J. Danaher, Esq.("Trustee").The Fee Application came before the Court as a part of the Trustee's Application for Compensation and Notice of Final Meeting of Creditors on the Final Account and Report of the Trustee ("Final Account"). Opposition to the Final Account was interposed by Haselton Lumber Company ("Haselton"), a creditor in the case.  On November 30, 2007, Dribusch filed a Reply to the Opposition, and the Court heard oral argument on December 11, 2007.[1]  Following that oral

---

[1] Haselton initially opposed the compensation requested by both Dribusch and the Trustee; however, at a hearing held before the Court on December 11, 2007, the Court directed the Trustee to recalculate his compensation pursuant to § 326(a) of the U.S. Bankruptcy Code,

2

argument, the Court requested, inter alia, that Haselton specify the services rendered by Dribusch that it contended were more properly the responsibility of the Trustee, and adjourned the hearing to January 15, 2008. On January 2, 2008, Dribusch filed an "Amendment Reducing Fee Request and for Other Miscellaneous Relief," in which he reduced his hourly rate from $225 per hour to $200 per hour, thereby reducing his overall fee request from $10,035 to $8,920. On January 4, 2008, Haselton filed a "Supplemental Affidavit in Opposition to Trustee's Request For Compensation and Application for Compensation By Special Counsel." No actual hearing was held on January 15th. Instead, the Court indicated to the parties that it would take the Fee Application under submission as of that date.

Factual Background

Dribusch was appointed as Special Counsel to the Trustee by an Order dated March 11, 2004 ("Appointment Order").[2] In his Application for Appointment, the Trustee noted that Special Counsel had special expertise in the area of fraudulent transfers and was being employed to

---

11 U.S.C. §§ 101-1532 ("Code") after deducting from that calculation a portion of the proceeds of the sale of certain real property representing the interest of the non-debtor spouse, Julie Churco. The Court determined that upon the filing of an amendment to the Final Account by the Trustee to reflect the deletion of the sale proceeds to the non-debtor spouse from his compensation base, it would reject any other objections to the Trustee's portion of the Final Account. On January 2, 2008, the Trustee filed an amended Paragraph D to his Final Account in which he removed $55,185.45 in "compensable receipts" and re-calculated his compensation at $13,794.25, a reduction of approximately $2,700.

[2] The Order of Appointment was executed by the Honorable Robert E. Littlefield, Jr, the U.S. Bankruptcy Judge sitting at Albany, New York, where the case was originally filed. The case was subsequently transferred to the Utica Division of the Court on March 6, 2007 following the appointment of a third bankruptcy judge for the Northern District of New York and realignment of case assignments.

investigate certain prepetition transfers and encumbrances by the Debtor, including the transfer of certain interests in real estate and the execution of certain mortgages prepetition, to determine whether or not they were "proper and valid." *See* Trustee's Application. dated February 9, 2004 at ¶¶ 2a, 3a and 4. In his Affidavit in Support of the Trustee's Application, Dribusch indicates that he "will prepare all necessary documents, pleadings, discovery demands, discovery responses and legal memorandum and appear on behalf of the Trustee at all Court proceedings, relative to the outstanding accounts receivable as well as any preferential transfers made prior to the bankruptcy filing." *See* Affidavit of Dribusch, sworn to February 2, 2004. There is nothing in either the Application for Appointment, the Affidavit of Dribusch or the Order appointing him that suggests that he would be asked to provide services in connection with the sale of real and personal property. Nor is there any further application by the Trustee to expand the duties of Dribusch.

In its objections, in addition to pointing out the discrepancy in the hourly rate which Dribusch has now corrected, Haselton advances three general arguments: 1) Special Counsel acted beyond the scope of his limited authority; 2) contrary to Special Counsel's representation, he did not commence adversary proceedings to avoid allegedly preferential or fraudulent transfers; and 3) the legal services rendered by Special Counsel "were in fact the general duties of the Chapter 7 Trustee for which Trustee is already seeking compensation." *See* Opposition to Final Report, dated November 7, 2007 at ¶ 46. At the Court's direction, Haselton's counsel has specified the entries in Dribusch's time records which he contends are duplicative of the duties performed by the Trustee. *See* Exhibit A, attached to Supplemental Affidavit of Samuel Haselton, sworn to on January 4, 2008 ("Haselton Supplemental Affidavit").

4

While not responding directly to Haselton's opposition, Dribusch notes that Haselton's attorney, Yuri J. Gaspar, Esq. ("Gaspar"), is himself a creditor of the Debtor.[3] According to the United States Trustee's ("UST") Report of Undisputed Election of a Chapter 7 Creditors' Committee, Gaspar, "an attorney representing several creditors," by letter received January 26, 2004, requested the election of a Creditors' Committee pursuant to Code § 705 and Federal Rule of Bankruptcy Procedure 2003(d)(1). An election was conducted on March 5, 2004 and Notice of Appointment of Creditors' Committee was filed by the UST on March 17, 2004 (Dkt. No. 14), six days after Dribusch was appointed as Special Counsel to the Trustee. Pursuant to an Entry of Appearance, filed on March 19, 2004, Gaspar identified himself as Attorney for Creditors' Committee.[4]

Also on March 19, 2004, Gaspar filed a motion on behalf of the Committee seeking to extend the time to file a complaint objecting to the Debtor's discharge and a determination of dischargeability of certain debts, which had been set at March 23, 2004. Said motion was granted by the Court on April 23, 2004, extending the deadline until June 21, 2004 (Dkt. No. 32).

On June 21, 2004, Gaspar filed a complaint on behalf of the Committee, as well as Haselton. The first cause of action in said complaint alleges fraudulent conveyances by the

---

[3] In a complaint filed on March 23, 2004 by Gaspar and his wife, Sylva, seeking a determination of nondischargeability, Gaspar acknowledges that they are creditors in the case (Adv. Pro. 04-90071).

[4] A review of the case docket following the appointment of the Committee indicates that it undertook a number of actions to include: conducting a Federal Rule of Bankruptcy Procedure 2004 examination, providing the Trustee with a real estate appraisal and commencement of an adversary proceeding objecting to the Debtor's discharge. In reviewing Code § 705, which authorizes the appointment of a creditors' committee, the Court observes that such actions may well have been beyond the scope of authority granted to such a committee pursuant to the statute.

5

Debtor, including the execution of a second mortgage to the Debtor's mother-in-law on March 27, 2003, as well as other alleged transfers of real property. (Adv. Pro. 04-90155). The complaint was later withdrawn on notice to all creditors following an Order of the Court, dated January 7, 2005, granting partial summary judgment striking the Committee as a plaintiff due to its lack of standing to commence an adversary proceeding against the Debtor pursuant to Code § 727(a) (Dkt. No. 11 in Adv. Pro. 04-90155).

Arguments and Analysis

Dribusch outlines the services that he did provide to the Trustee. In his reply to Haselton's objection, filed on November 30, 2007, he acknowledges that a portion of the services he rendered was beyond what was contemplated at the time of the Trustee's Application for Appointment. He notes, however, that at the time the Trustee sought his appointment in February 2004, the application was based on the facts that were available to the Trustee at the time. Special Counsel asserts that with regard to the services rendered thereafter that may have exceeded the scope of the Appointment Order, Gaspar was well aware of his involvement in the case and did not object at any point to Dribusch rendering those services on behalf of the Trustee.[5]

Dribusch refers the Court to five matters on which he provided services to the Trustee, which were arguably outside the scope of the Trustee's Application for Appointment.

---

[5] The Court does note one significant discrepancy in Special Counsel's Fee Application, dated July 5, 2007, at ¶ 6. Dribusch asserts that he commenced an adversary proceeding on behalf of the Trustee to avoid a preferential transfer. A review of the case docket does not reflect any such adversary proceeding having been commenced. Gaspar, in his opposition filed on behalf of Haselton, notes that Dribusch's reference to such an adversary proceeding is "clearly a misleading statement." See Opposition to Final Report, dated November 7, 2007, at ¶ 45.

6

Specifically, the first consisted of his involvement in the Committee's discharge adversary proceeding; the second included document review concerning Gaspar's complaint regarding the Debtor's alleged misconduct; the third involved the sale of the Trustee's interest in the Saranac Lake property; the fourth addressed the Trustee's disposition of the Debtor's non-exempt assets, including potential claims for preferential transfer and fraudulent conveyance; and finally, representation of the Trustee in connection with Haselton's motion to hold the Trustee in contempt.

Turning to Haselton's objection to Special Counsel's Fee Application, it asserts that in the event the Court decides to consider the unauthorized services rendered by Dribusch, many of them were in the nature of the general duties of the Trustee or otherwise non-compensable.[6] Attached to the Haselton Supplemental Affidavit is Exhibit A, which details the time entries of Special Counsel for which it contends the services reflected in the entries are either "Unnecessary Time Spent," "Excessive Time Spent," "Trustee's Work," or "Fee Paid."

Taking the latter category first, Haselton contends that legal fees in connection with the sale of the Debtor's real estate have already been awarded in the Order approving the sale. The Court has reviewed the Order of September 14, 2005 approving the sale and finds no reference in that Order to the payment of attorney's fees. The Court does note that in the Trustee's motion

---

[6] As a subset of this portion of the Haselton objection, it contends that Dribusch cannot be compensated for services he rendered prior to the effective date of his appointment to wit: March 11, 2004. A review of Dribusch's time records, submitted in support of his Fee Application, indicates that he expended 1.3 hours prior to the date of his appointment, approximately one hour of that time increment was devoted to review and execution of his retention documents. This Court does not disallow time reasonably expended by a professional in connection with his/her appointment despite the fact that it occurs prior to the actual date of appointment.

7

to sell there is a reference to the payment of $2,000 in attorney's fees as an element of "customary closing costs." Those fees, however, do not appear to have been paid to Dribusch in his capacity as Special Counsel to the Trustee. They are fees typically paid to an attorney who actually handles the closing. The services primarily rendered by Dribusch were those relevant to obtaining authorization from this Court for the Trustee to actually sell the real estate. A review of Dribusch's time records relative to the sale of the real estate, as well as the Trustee's Record of Cash Receipts and Disbursements, does not reveal any services or disbursements which would suggest that Dribusch was previously compensated. In addition, the Court has reviewed the nature of the services rendered by Dribusch in connection with the sale of the real estate and concludes that they are reasonably related to the designated task, and they do not duplicate services that would be typically or actually provided by the Trustee in this case.[7]

Under the category "Trustee Work," the Court has compared the time entries in the Dribusch Fee Application to entries for similar dates in the Trustee's time records and finds minimal duplication. The Court notes that it is Haselton's contention that numerous entries in Special Counsel's time entries constitute work typically performed by a trustee, but it is not clear to the Court what standard Haselton is using to distinguish "Trustee Work" from services rendered by special counsel to a trustee. In this case, it is apparent from Special Counsel's time records that the bulk of his time was devoted to the disposition of the Debtor's interest in the real property in Saranac Lake, New York (13.8 hours), and the disposition of the Debtor's non-exempt assets, including evaluation of potential causes of action for preferential and fraudulent transfers

---

[7] By letter dated March 11, 2008, the Trustee advised the Court that Special Counsel had not been paid any attorney's fees or reimbursement of expenses to date.

8

(12.1hours). A review of the services rendered in connection with those two specific matters does not indicate that they were services typically performed by a case trustee. In fact, the Court is unable to identify any services rendered by Special Counsel which it could unequivocally characterize as being within the exclusive domain of a chapter 7 trustee as delineated in Code § 704.[8]

Turning to Haselton's objection that Special Counsel's time records reflect numerous instances where the time devoted to the task was excessive or unnecessary, the Court notes that this portion of the objection focuses primarily on entries in the time records that deal with Special Counsel's review of correspondence from the Trustee, as well as various motions and orders. It appears that the bulk of this time occurred shortly after his appointment and was utilized primarily by Special Counsel to familiarize himself with the case. The total time involved was 4.5 hours or $1,012.50.[9]

While hindsight is frequently 20/20, the Court believes that it must allow certain latitude to professionals in their representation of a Chapter 7 trustee by applying a standard of reasonableness. *See United States Trustee v. Porter, Wright, Morris 7 Arthur (In re J.W. Knapp*

---

[8] The fact that the Trustee in this case is also an attorney does not require that he wear "two hats" and provide both administrative oversight and legal representation to the bankruptcy estate although the Court notes in reviewing the Trustee's time records here that he did, in fact, render legal services with regard to a number of matters.

[9] Having adjusted Special Counsel's hourly rate to $200 per hour, the actual charge is $900. Additionally, of the total hours alleged to be excessive or unnecessary, 1.5 hours were devoted to preparation of the Fee Application, which this Court and other bankruptcy courts routinely approve so long as the fee requested does not represent a disproportionate share of the total hours. *See, e.g. In re Bennett Funding Group, Inc.*, 213 B.R. 234, 249 (Bankr. N.D.N.Y. 1997). Indeed, Code § 330(a)(6) specifically acknowledges "compensation awarded for the preparation of a fee application . . . ." in connection with professional persons employed under Code § 327.

*Co.*), 930 F.2d 386, 388 (4th Cir. 1991) (noting that there may be "unique difficulties" in differentiating between the duties of a trustee and those of the trustee's attorney to the extent that "legal expertise" is required); *see generally, In re Leslie*, 211 B.R. 1016, 1018 (Bankr. M.D. Fla. 1997) (stating that "given the difficult tasks a Chapter 7 trustee performs, such a black and white demarcation [between statutory services to be performed by the trustee and legal services performed by an attorney designated to assist the trustee] is simply not possible").

It is obvious from the onset of this case that there was a certain amount of distrust between Gaspar and the Debtor. At times that distrust spilled over into the relationship between Gaspar and the Trustee/Trustee's Special Counsel.[10] Haselton, through Gaspar, has asserted that the Trustee failed to timely administer estate assets and that Special Counsel has routinely rendered services beyond the scope of his authority. Haselton, through Gaspar, also complains that after payment of the Trustee pursuant to Code § 326 and payment of Special Counsel pursuant to Code § 330, there will be approximately $36,000 available to pay some $395,000 in unsecured claims or a dividend of approximately 9%. Haselton will, of course, fare considerably better than other unsecured creditors having induced the Debtor to pay over his $10,000 equity exemption in the Saranac Lake property to it.

While the Court finds no fault with the actual services rendered by Special Counsel as indicated above, there nevertheless remains Haselton's objection based upon its contention that

---

[10] In addition to the instant opposition to the Trustee's compensation and the fees of Special Counsel, on November 7, 2006, Gaspar, on behalf of Haselton, filed a motion to hold the Trustee in contempt of Court for failing to disburse the $10,000, representing the Debtor's homestead exemption, to Haselton in satisfaction of Haselton's objections to the Trustee's sale of Debtor's interest in the Saranac Lake property. Ultimately, the motion was settled and withdrawn on or about February 15, 2007.

10

Dribusch rendered services to the Trustee which went well beyond the limited role for which he was authorized by the Appointment Order. In this regard, the Court observes that a number of those services arose in response to actions undertaken by Gaspar on behalf of the Chapter 7 Creditors Committee which, as noted previously, were clearly beyond the scope of that Committee's statutory authority.

In *In re New England Fish Co.*, 33 B.R. 413 (Bankr. W.D. Wash. 1983), the trustee obtained the appointment of a certified accountant and financial consultant until June 12, 1980. *Id.* at 415. However, the accountant continued providing services to the trustee for another two years without authorization by the court. In addition, those services were beyond the scope of duties delineated in the order appointing him. *Id.* at 420. The court acknowledged that the services had benefitted the estate but required that he turn over the $179,925 he had received during the two year period, finding it impossible to segregate services that were "proper," albeit beyond the period for which he had originally been appointed, and those that were "improper." *Id.* at 422.

The court in *New England Fish* recognized the harsh result but, nevertheless, was reluctant to hold otherwise, noting that "courts have consistently held that professionals who render services to bankruptcy estates without court approval forfeit their right to compensation from the estate." *Id.* at 418. The court acknowledged that usually the issue arises when the professional had not been retained pursuant to a court order, which is not the case presently before this Court. As the court in *New England Fish* noted, "the primary purpose of this rule is to keep tabs on and curb administrative expenses." *Id.*; *see also In re Mexican Café of Richmond, Inc.*, Case No. 80-00144, 1986 WL 797747, at *2 (Bankr. E.D. Va. 1986) (noting the purpose of Code

11

§ 330(a) is to protect and preserve the debtor's money for its creditors. A bankruptcy court is charged with the responsibility to examine fee requests to determine whether the services, for which the fees were sought, exceed the authority originally granted and had to be denied). The court in *New England Fish* went on to quote COLLIER ON BANKRUPTCY, which stated

> When there is no compliance with the Code or rules, there is no right to compensation. The services . . . must have been performed pursuant to appropriate authority under the Code and **in accordance with an order of the court** . . . Otherwise, the person rendering services may be an officious intermeddler or a gratuitous volunteer . . . even though valuable services were rendered in good faith.

*Id.* at 419, quoting 2 COLLIER ON BANKRUPTCY ¶ 327.02 (15th ed. 1982) (emphasis supplied).

While the Trustee, at the time he submitted his Application for Appointment, may not have contemplated he would need to enlist the services of Dribusch, not only in connection with the sale of the real property and personal property, but also in responding to Gaspar's complaints filed against the Debtor, on behalf of Haselton and the Committee, at some point he should have sought to expand the duties of Dribusch beyond the limited function of investigating potential chapter 5 causes of action. This he failed to do and, unfortunately, the Court cannot approve Dribusch's fees in connection with those services rendered by him, other than those for which he was actually appointed.

Accordingly, the Court requests that Dribusch submit to the Court within 30 days of the date of this Order and serve on the Trustee and Gaspar an amended fee application consistent with the discussion set forth herein.

IT IS SO ORDERED.

Case 07-61442-6-sdg    Doc 114    Filed 04/10/08    Entered 04/10/08 14:50:43    Desc
Main Document    Page 12 of 12

12

Dated at Utica, New York

this 10th day of April 2008

/s/  Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge